Okay, uh, Mr Camp. Good afternoon. Good afternoon, Mr Wagner. May it please the court. My name is Shane Canton. I am appointed counsel representing Mr Norey in this appeal. I also represented him at trial in the district court of the underlying matter. This appeal involves Mr Norey's claim that the search warrant in this case issued by a state court judge was issued pursuant to an affidavit that failed to establish probable cause and also that the affidavit and the other information in the officer's possession was otherwise so deficient that he should not be given the benefit of good faith exception under Leon. Um, the facts of this case are unique. Both myself and Mr Wagner cite the court in our briefs to the various cases of this court that have addressed, um, Leon and the good faith exception. But the facts of this case really, I think, are what are unique and different from those other cases. In this case, we have basically two competing locations. We know from the officer's affidavit that there's a confidential informant. He informs the officer that Mr Norey is distributing heroin from a location on College Street here in Springfield. In fact, all of the confidential informants information given to the officer involved the College Street address. Um, what we don't know either from the affidavit or from the officer's subsequent testimony at the suppression hearing is how the confidential informant comes to know that information. Is this face to face? Is this a purchase situation where the informant actually purchased drugs from Mr Norey or with Mr Norey present? Or is this second or third hand hearsay? We simply don't know. Um, we also know that the CIA tells the officer that this information he has has occurred within the last year. We don't know the timing of that. We don't know if it was relatively soon before the search warrant was applied for or if it was. Counselor doesn't say on that address, doesn't say within the last several months. What? Yes. When I look at the affidavit, um, says the CIA is reliable in the past and I see within the last several months. Um, he opens the paragraph at the bottom page three. The officer in the last several months I've conducted surveillance. Let's go ahead. Yes. Yes. The officer did conduct surveillance apparently based on the CIA's information. The officer goes to College Street and conducts this surveillance. But what he doesn't see or what he doesn't testify to or include in his affidavit other than describing numerous vehicles coming and going like the magistrate recognized in his recommendation finding against probable cause. We don't know if these vehicles are coming at all hours of the day and night. We don't know if these vehicles are known to be associated with drug activity. There's nothing other than the coming and going that we otherwise see as indicia of drug dealing. Help me. Help me with the facts. And I'm in your time. But it says that they can direct traffic stops on two different vehicles and both have marijuana in the bag. Yes, they stopped a vehicle in November 30 and another vehicle on December 20. Both. And you're reading along with me. But just just tell me how it squared what you just said. Go ahead. Well, those two vehicles, Judge, although we know that one vehicle contained a small amount of marijuana and we know another vehicle I think involved heroin, I can't recall. We don't know quantities. And so, again, if the officer describes this as a search warrant necessary to investigate drug dealing, that's the information that the confidential informant has provided him. There's nothing from those two vehicle stops that indicate that they are involved in drug dealing. There's nothing from any of what had a scale council. I'm looking same page. One had a scale. He did. But none of the occupants apparently in those vehicles indicate that Mr. Norrie was present at the College Street address that they had just left, that they had purchased drugs from Mr. Norrie. Other than the fact that these two vehicles left and were stopped and were in the possession of those items, there's nothing connecting that to Mr. Norrie. In fact, in the affidavit and I believe in the officer's subsequent testimony, the only connection they had to Mr. Norrie at the College Street address apparently was the fact that he was listed as a responsible party on the utility bill. He paid a bill once or twice and that the officer had surveilled when they were surveilling College Street, had seen him coming and going. But again, the coming and going could be as completely innocent as coming and going or it could be something else. And there's nothing that I see in the testimony or the affidavit that rises to that level of indicia of drug dealing. And that's the situation we've got. The government cites to and I went back and looked closely at one of this court's most but the facts are considerably different. In Mayweather, they actually have information from an informant that the defendant is dealing drugs from an escalade. They connect the escalade to his residence. And in that case, they actually have two separate controlled buys from the defendant using the confidential informant. So although Mayweather is cited, I think the officer had information that connected illegal activity to the College Street address. And what he didn't have, what he never really got was information that Mr. Norrie was doing any drug dealing from the Montclair apartment address. The one time they stopped Mr. Norrie, again, keeping in mind that the informant said Mr. Norrie is dealing large quantities of heroin. When they stopped Mr. Norrie leaving that apartment, they found a very small amount, a user amount of marijuana in his pocket, which he admitted having. They smelled the odor of burnt marijuana, and he admitted having just recently smoked marijuana. But they don't find in his car or on his person, again, things that we would expect drug dealers to have in their possession when they're traveling. Larger quantities of drugs, heroin, for example, scales, money, things of that nature. But was there any real dispute, though, that Mr. Norrie lived at the Montclair residence? Dispute? Your Honor, I'm sorry. Dispute in terms of what? Well, I mean, it was clear from the affidavit that the officer believed he lived at the Montclair residence. And I'm just trying to figure out if really you've now tried this, you know, this case has gone through your trial counsel. Was there any dispute that he actually lived there? There was dispute that he lived there. There was not dispute that he did stay there regularly, if that makes sense. It does. I'm asking because Mayweather kind of gets at, at least from a good faith exception, if you have, you know, that an officer can presume, and perhaps magistrate can presume as well, that a drug dealer keeps drugs in his residence. And if there's a dispute about whether it's actually his residence, then perhaps Mayweather is not applicable for that reason as well. And there was, there was evidence from his driver's license and testimony at trial that he had an address of a residence down in Ozark, Christian County, Missouri, south of Greene County. His wife was on that utility bill and the apartment was in her name under the lease. But there was no dispute that he would stay there regularly. I mean, the officer saw him that residence on a number of occasions. So whether that's his primary residence, or he was just staying there from time to time as circumstances required, that was a disputed issue at trial. Counsel, what, what are, if, if any, are the factual errors in the affidavit? The factual errors in the affidavit, going back, involve the utility issue. The officer, I believe in his affidavit, indicated that both Natasha Norrie and Roy Norrie were listed on the utility bill. At the suppression hearing, that later was proven to be an inaccurate statement. Again, whether, I think the claim at that point was that it was a lie or a misrep, material misrepresentation. And there was a request for a Frank's hearing by previous counsel before me. But at least at the suppression hearing, everybody conceded that was a factual error. Well, he wasn't an account holder, but he was a responsible party, right? Is that the right address for that statement? He was a, he was a responsible party, your honor, at the College Street location. Oh, okay. The utility bill was in Natasha's name. At the apartment, it was only in Natasha's name, both the lease and the utility bill, and he did not appear on either of those. And nor, nor is a responsible party. Correct. Okay. And was there an explanation? Is the, does the record contain an explanation from the, from law enforcement as to the error? No, I think the, I think the officer testified at the suppression hearing that he simply got the two addresses mistaken in his mind when he drafted the affidavit. He was aware that Mr. Norrie was a responsible party on the College Street address, which they had already searched pursuant to a separate warrant. And when he drafted this warrant, I understood he explained that he just got it with respect to reports of, uh, that Mr. Norrie was involved in drug dealing in, in Chicago, as opposed to Springfield. Yes. The officer testified at the suppression hearing that he had a report that a woman, that's all he knew, uh, with the last name Norrie had apparently called to make an anonymous report that Mr. Norrie was selling drugs and guns. And according to the officer selling guns and drugs out of the Montclair apartment, the report itself was actually admitted at the suppression hearing, I think exhibit G. Uh, and the report indicates that he, the caller said that he was selling guns and drugs from, in Chicago, not from the Montclair apartment. And the officer said that report needed to be corrected, but there was no further testimony developed as to how or why that was the case. If that answers your question, your honor. Okay. Thank you for your answer. And Mr. Canton, I will, uh, give you two minutes in rebuttal, uh, as you requested. So, you know, to be prepared for that. Uh, Hey, Mr. Wagner. Thank you. May it please the court, David Wagner for the United States. Turning first to the question about the evidence that this was Roy Norrie's apartment. There were a couple of questions about that. I point the court to page four of six of the affidavit. Um, the third paragraph, first line, it says Roy Norrie's apartment. Um, the next paragraph down also says that Roy and Natasha Norrie were the account holders for the utilities. Of course, we know that that's wrong. So explain it. Right. So Mr. Canton is correct. The officer testified at the suppression hearing that, um, Roy and Natasha Norrie were either account holders or not the Mount Claire address. And he, he made a mistake and, and, and mixed up the two both the magistrate court, the magistrate judge and the district court found that that mistake was not knowing and intelligent or reckless that it was negligent. I don't believe, uh, Mr. Norrie is challenging those findings on appeal. So it was a, it was a negligent mistake. Officer Nick Nicholson testified at the magistrate hearing, right? He did. Correct. There was no at the district court, right? Correct. Proceed. Okay. So, but just going up to the paragraph above that, the statement that it was Roy Norrie's apartment, I think is, is separate from the utilities mix up. And I think it's sufficient for the court, the state judge reviewing this warrant application to conclude that it was his residence. Um, I like to start with, with whether there was the issue of probable cause and then, and then move into the good faith exception if that's all right. Um, but before looking at the particular evidence in the, uh, warrant affidavit, I think there's a couple of fundamental things to keep in mind. The first is that this court does not need to determine for itself whether there was probable cause that's already been done. The question now is whether the judge that found probable cause had a stance, substantial basis to reach that finding. That's the only question this court needs to decide. The other piece of this is that when evaluating that question, this court should pay great deference to the state judge's finding that that language, great deference comes from, um, directly from the Supreme court. So I think those pieces are important to keep in mind when looking at, um, whether there's probable, there was a substantial basis for probable cause here. And the other, the third piece of it is that probable cause doesn't require any sort of it only requires a fair probability under all the circumstances. So those things in mind, looking at the warrant affidavit, I think it does establish probable cause to search, uh, Roy Norey's apartment on Montclair street. And one thing that I think has been maybe lost in the shuffle a little bit, uh, uh, in the interest of some shorthand is that the, the, the warrant that the officer received was not limited to evidence of drug trafficking. We use that as shorthand that the warrant was to find evidence of drug trafficking, but that's possibly not technically correct. The warrant was for all evidence of all violations of chapter five 79 of the Missouri code. So it was for possession offenses as well as distribution offenses. So the officers got a, got a warrant to search for the existence of marijuana, um, and heroin, not just distribution of marijuana and heroin. But does that answer our cases? Use the word nexus. They love the word nexus. Yes, they do have nexus between the drug traffic and the residents beyond the mere fact that the defendant lives there. Now tell me that nexus, uh, between that, that residents and the drug trafficking. There's a direct, there's a direct evidence of nexus here, and that is the, the finding that after shortly after leaving his apartment before stopping anywhere else, Mr. Norrie had marijuana in his jacket, not, not in his car, in his jacket, specifically on his person. And he, one little, one little baggie, right? One little baggie. It was not a large amount, small amount. Does that, does that make a nexus between drug trafficking and the residents beyond the fact that the defendant lived there in a town? This isn't the college part of Springfield too, as you well know. I, I have to push back a little bit on the premise of that, that question, which is that there needs to be a nexus between, um, his possession of marijuana and drug trafficking. I don't think they needed evidence specifically of drug trafficking because the warrant allowed them to search for the existence of drugs, not just evidence of drug trafficking. But even so, I do think that when you look, consider the marijuana direct link of some illegal drug activity, and remember, he had also admitted he had recently smoked it. So not only did he have it in his jacket, he admitted he had recently smoked some, presumably additional marijuana that was smoked up at that point. Um, that's a direct connection between his, the, the apartment and some drug activity, not a lot, I'll grant you, but you can't look at that isolation. You also have to consider that a reliable informant had provided all the additional information, which the police had corroborated in several important respects. So counsel does, Oh, go ahead. No, no, please. Okay. Does, um, does Mayweather change things on the nexus requirement with respect to the good faith exception? Because it does seem to say that the issuing judge and the officer can assume that somebody, um, would keep drugs in their home, which kind of weakens the nexus, at least for good faith exception. How does the government read that, that opinion? Um, I think the, the, the, the important point in Mayweather was that there was more than just an inference. I don't think the court in Mayweather limited it to drawing an inference between evidence of drug trafficking and probable cause to search a home, but it did point to the fact that he was, he completed a drug deal, the defendant in Mayweather and then returned to his house. And the court picked up on that as the evidence of a link between the drug activity and the residents. So I think Mayweather, I would categorize as the inference plus a little more, plus the fact that he returned to his house after selling the same evidence here. I mean, yeah, we have the drugs, um, you know, that were, that were on him, but we don't have a drug deal. So should we not extend Mayweather here? Oh, no, I think Mayweather extends here for sure. We have evidence of drug trafficking that the confidential informant said he was involved in drug trafficking. And then we have something more, which is the fact that he was found in possession of illegal drugs and admitted to engaging in illegal drug activity shortly after leaving the apartment. And I don't think, I don't think it has to be evidence that he evidence of a drug transaction per se. It's, it's the, the, the drug activity that a link between the apartment and illegal drugs, not just the drug transaction, um, would qualify. I would also submit though, that I, I think judge now justice Kavanaugh's, um, reasoning in the, I believe it's the Spence Spencer decision out of the DC circuit is persuasive on this point where he says, look, everybody knows that people engaged in drug dealing have to keep their drugs somewhere. They have to mix and assemble them somewhere. And everybody knows that a reasonable place to do it is at their home. So a judge can infer that if someone is involved in drug trafficking, they'll keep evidence of that drug trafficking in their home. I find that persuasive. Do you know if the Mayweather case actually says if there's not a direct nexus, then we only go to logical inferences. I'm paraphrasing. Does he use the term not a direct nexus? I'm sorry, judge Benton. I don't know. That's okay. We can check easily. We can check easily. But, but my point simply is maybe, maybe that's the difference in these two lines of cases, direct and not a direct, go ahead. One thing I, one way that I think it is important to look at is that the Supreme Court has said in Leon, actually, that reasonable minds frequently may differ on the existence of probable cause. So it's not surprising that some judges look at drug activity and draw an inference that it will be, that evidence will be found at a home. And maybe some don't. And that doesn't mean there's not probable cause that, that sort of reasonable disagreement is built into the standard. So I don't think there has to be a hard and fast rule that if you have evidence of drug distribution, you can infer that it will be found at home or vice versa. I think reasonable that Supreme Court has said that reasonable minds can differ on these sorts of things. So one judge might find that inference reasonable where another might not. And that's, I don't think it's a problem for purposes of probable cause. I'm short on time. So I'd like to spend just a couple minutes or less than the minute I have left on the good faith exception. And that is because it's, I think whether there's probable cause here is somewhat of a closed question. But the officer in this case did exactly what an officer is supposed to do in that circumstance. He took that evidence to a judge and said, judge, is this enough to get a warrant? And the judge said, yes. And in that circumstance, an officer can rely on that decision. It's not the officer's responsibility to decide whether there's probable cause. It's the judges. So in closed cases, this is exactly what, assuming this is a closed case, this is exactly what an officer should do. You should go to a judge, let the judge make the determination, and then reasonably rely on that determination. There's no police misconduct to deter in this case, and therefore it would be inappropriate to suppress the evidence that was found. I'm out of time. First finish. Oh, I was just going to ask if there are any further questions. Okay. And there is one for me. Uh, I can't read the circuit judge's signature here. Uh, do you know which circuit judge it was that issued this page six to six? I do know that the judge's name was referenced in the, the transcript of the suppression hearing judge Benton. I can't remember off the top of my head, but the name is, is in there. Nope. Thank you. It's something else we can figure out. There aren't that many judges there. Uh, okay. And so Mr. Kenton, we're back to you for two minutes of, uh, of, uh, we're about. Oh, you're muted. Am I on now? You're on. I apologize. So I'll start with that last question first. The, uh, judge who signed this was Jerry Harmison, H-A-R-M-I-S-O-N. Thank you very much. Recollection was that judge Harmison had just taken the bench, uh, not too long before this and came from a civil background. I know counsel who tried the suppression hearing touched on that at the, at the hearing you'll see in the transcript, but it was never really developed. A couple of things, um, in response to the comment by Mr. Wagner that, you know, this affidavit, this search warrant application was for, uh, chapter 579 offenses. You know, it is true that it does have that, that one line, uh, on page three under grounds for issuance, looking for offenses in violation of chapter 579. But the remainder of that affidavit is directly dealing with issues involving drug dealing and drug trafficking. If you look, uh, on page four and page five of the affidavit, all of those subsections down there that the officer cites to, um, basing his experience on individuals participating in possessing or distributing controlled substances, he goes through, uh, ledgers, uh, drug trafficking is referenced. Um, the next page, page five, he refers to, uh, equipment used to manufacture, store and process. I mean, clearly it is an affidavit dealing with, uh, the investigation of drug trafficking, which in this case is where I have the particular problem, uh, of this nexus, because I don't believe, uh, they have really any sufficient nexus to get them to the Montclair apartment. And it's really that, that lack of nexus, that competing, uh, interest of both the commercial street location, which they had already searched. Commercial street was the location where the CI said all this stuff was going on and they searched it and they listed what they found, but they didn't describe at the suppression hearing how any of the items found at commercial street were in any way connected to Mr. Norrie. Counsel, your time has expired. Thank you. I appreciate you. Thank you both for your argument. Case number 21-2406 is